NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1866

_____

JOSE VLADIMIR VARGAS-ARGETA,
                                                            Petitioner

v.

THE ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA,
                                                            Respondent

_____

On Petition for Review of a Decision of the
Board of Immigration Appeals
BIA No. A208-985-374
(U.S. Immigration Judge: Honorable Kuyomars Q. Golparvar)
_____

Argued: November 08, 2018

Before:  AMBRO, SCIRICA, and RENDELL, *Circuit Judges*.

(Filed: April 3, 2019)

Amanda B. Elbogen [ARGUED]
Kirkland & Ellis
333 South Hope Street
29th Floor
Los Angeles, CA  90071

Michael Glick
Kirkland & Ellis
1301 Pennsylvania Avenue, N.W.
Washington, DC  20004

*Counsel for Petitioner*

Jonathan A. Robbins [ARGUED]
Joanna L. Watson
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC  20044
        *Counsel for Respondent*

_____

OPINION[*]

_____

**SCIRICA**, *Circuit Judge*

Jose Vladimir Vargas-Argeta, a native and citizen of El Salvador, entered the United States unlawfully in 2016. When the Department of Homeland Security initiated removal proceedings, Vargas-Argeta conceded removability and applied for asylum, withholding of removal, and protection under the Convention Against Torture. Following a hearing, an Immigration Judge denied all relief, and the Board of Immigration Appeals dismissed Vargas-Argeta's appeal. Vargas-Argeta now petitions for review of that order. Because the Board did not legally err and substantial evidence supports its decision, we will deny the petition for review.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

# I.

At his removal hearing before the Immigration Judge (IJ), Vargas-Argeta testified in support of his applications for relief. Beginning in 2009, he worked for his father's carpentry business in El Salvador. But in 2013, gang activity grew rampant in their town, and gang members began demanding that area businesses pay extortion fees. Vargas-Argeta and his father paid the gang $100 per week. Sometime in 2015 or 2016, the gang demanded more money, but Vargas-Argeta's father could not pay more than $100. As a result, the gang threatened Vargas-Argeta's life and assaulted him on five occasions. Vargas-Argeta did not report these assaults because he believed the police were corrupt and would not assist, and the gang told him not to contact the police. Ultimately, he left his town to live with his sister in San Salvador. He was not harmed or mistreated while he lived with his sister, but he testified the gang came looking for him. Because he believed the gang would find and harm him, he fled to the United States. Although the carpentry business closed after he left El Salvador, Vargas-Argeta testified the gang would still kill him for the past failure to pay.

The IJ found Vargas-Argeta testified credibly, but denied all relief. As to the asylum claim, the IJ held Vargas-Argeta had not been persecuted on account of any protected ground. The IJ stated that "[f]ear . . . based upon generalized criminal activity and civil disorder is insufficient to be granted asylum." App. 34. Relying on precedent of the Board of Immigration Appeals (Board or BIA) that rejected proposed social groups composed of victims of targeted gang violence, the IJ determined that Vargas-Argeta's "resistance to the gangs or being unable to pay any kind of extortion fee" is not a

protected category for purposes of asylum. *Id.* The asylum claim also failed because Vargas-Argeta had not shown a well-founded fear of future persecution—he could relocate to another part of El Salvador, and the closure of the carpentry business made it unlikely he would be targeted or harmed.

Noting that the burden for withholding of removal is higher than that for claims of asylum, the IJ also denied Vargas-Argeta's withholding of removal application. Turning to the Convention Against Torture (CAT) claim, the IJ determined "the evidence seems to suggest that [Vargas-Argeta] would not be tortured" upon return to El Salvador because of the closure of the carpentry business. App. 37. Moreover, he never reported anything to the police, so the IJ could not find the police were aware of or involved in what happened to him and his family. The IJ also noted the country reports showed that high-ranking officials were working to curb corruption in El Salvador. In light of these findings, the IJ determined there was no willful blindness or acquiescence on the part of government officials, and denied Vargas-Argeta's CAT claim.

Vargas-Argeta appealed, and the BIA dismissed his appeal in a single-member decision. The Board agreed with the IJ that he was a victim of criminal activity and was not persecuted on account of his membership in a particular social group (PSG). Although Vargas-Argeta's appeal specified that his proposed PSG was "young men in El Salvador who have refused to pay extortion to a gang," the Board rejected this formulation. Accordingly, it held Vargas-Argeta had not shown eligibility for asylum or withholding of removal. As to the CAT claim, the Board acknowledged Vargas-Argeta's arguments related to corruption and impunity in El Salvador but held Vargas-Argeta did

4

not show he more likely than not would face torture by or with the acquiescence of a public official.

Vargas-Argeta filed a timely petition for review to this Court.[1]

**II.**

The BIA had jurisdiction under 8 C.F.R. §§ 1003.1(b)(3) and 1240.15. We have jurisdiction to hear this appeal from the BIA under 8 U.S.C. § 1252(a)(1).

We generally review the BIA's legal determinations de novo and its finding of facts under the "substantial evidence" standard. *Valdiviezo-Galdamez v. Att'y Gen.*, 663 F.3d 582, 590 (3d Cir. 2011). Under that standard, we can only reverse the BIA's decision if "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). "Because the BIA did not summarily affirm the IJ's order but instead issued a separate opinion, we review the BIA's disposition and look to the IJ's ruling only insofar as the BIA deferred to it." *Roye v. Att'y Gen.*, 693 F.3d 333, 339 (3d Cir. 2012).

**III.**

Vargas-Argeta contends the Board erred in denying him relief. With respect to his asylum and withholding of removal claims, he primarily challenges the Board's rejection of his proposed PSG, arguing that rejection was wrong and not adequately explained. As to his CAT claim, Vargas-Argeta also raises both substantive and procedural error,

---

[1] We thank pro bono counsel for their excellent representation of Vargas-Argeta.

contending the Board erred in denying his claim and failed to properly consider the evidence.

## A.

To be eligible for asylum relief, a petitioner must establish that he is a refugee, 8 U.S.C. § 1158(b)(1), which is defined as a person who has suffered persecution or has a well-founded fear of persecution "on account of race, religion, nationality, membership in a particular social group, or political opinion," *id.* § 1101(a)(42)(A). Here, Vargas-Argeta claims he fears persecution because of his membership in a proposed PSG he defines as "young men in El Salvador who have refused to pay MS-13 gang extortion fees." Pet'r's Br. at 23. Under BIA precedent to which we have afforded *Chevron* deference, Vargas-Argeta must make a three-part showing to prove the existence of a recognized PSG. *S.E.R.L. v. Att'y Gen.*, 894 F.3d 535, 540 (3d Cir. 2018). He must "establish that the group [at issue] is (1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." *Id.* (quoting *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 237 (BIA 2014)) (alteration in *S.E.R.L.*).

In denying Vargas-Argeta's proposed PSG of "young men in El Salvador who have refused to pay extortion to a gang," App. 25 (internal quotation marks omitted), the Board relied on its precedential decisions in *Matter of W-G-R-*, 26 I. & N. Dec. 208 (BIA 2014), and *M-E-V-G-*, 26 I. & N. Dec. 227. In those cases, the BIA rejected proposed PSGs consisting of victims of gang-related criminal activity in part because they did not meet the third requirement—they were not "socially distinct, that is, recognized in the

6

society in question as a discrete class of persons." *M-E-V-G-*, 26 I. & N. Dec. at 249; *see also W-G-R-*, 26 I. & N. Dec. at 210. In *M-E-V-G-*, the Board rejected a PSG of Honduran youth who refused to join gangs. 26 I. & N. Dec. at 228. It explained that in countries with prevalent gang violence, "the residents all generally suffer from the gang's criminal efforts to sustain its enterprise in the area." *Id.* at 251. The Board concluded that groups composed of individuals affected by such criminal efforts are thus not sufficiently discrete absent evidence they are perceived by society as a distinct group. *Id.* at 251. Similarly, in *W-G-R-* the Board rejected a PSG of former gang members that had renounced their gang membership. 26 I. & N. Dec. at 221. Because the petitioner had put forth no evidence showing that group was "perceived, considered, or recognized in [the country's] society as a distinct group," the PSG was not recognized. *Id.* at 222.

Noting these decisions established that "those targeted for extortion by gangs or criminals are not per se members of a cognizable [PSG]," the Board determined Vargas-Argeta, "[o]n this record, . . . has not shown otherwise." App. 25. Rather, he "was a victim of criminal activity, and there is no evidence that the gang members . . . pursued him because of his . . . membership in a particular social group." *Id.* Because Vargas-Argeta had not shown membership in such a PSG, the Board held he had not established eligibility for asylum. Moreover, as a petitioner seeking withholding of removal must satisfy a higher standard than that of asylum—i.e., "that it is more likely than not . . . that [the petitioner] would suffer persecution upon returning home," *Valdiviezo-Galdamez*, 663 F.3d at 591—the Board also determined Vargas-Argeta was not eligible for

7

withholding of removal. *Cf. id.* ("[A]n alien who fails to qualify for asylum is necessarily ineligible for withholding of removal.").

We find the Board's decision meets the substantial evidence standard. As we have recognized, the "social distinction" requirement "works to narrow the universe of 'particular social groups' to those whose members are seen to be 'distinct' or 'other,' like the distinctiveness inherent in the other enumerated grounds of race, religion, nationality, and political opinion." *S.E.R.L.*, 894 F.3d at 553 (quoting *M-E-V-G-*, 26 I. & N. Dec. at 244). To show such distinction, it is "well within the bounds of reasonableness" for the Board to "requir[e] evidence that the society in question recognizes a proposed group as distinct." *Id.* at 551. Vargas-Argeta has pointed to no evidence showing Salvadoran society perceives young men who refuse to pay extortion to gangs as a socially distinct group. Because he has failed to meet the social distinction requirement, he has not shown his PSG is legally recognized.[2]

We also reject Vargas-Argeta's related claims of procedural error. Although he contends the Board did not adequately explain its decision to reject his PSG, we find it provided sufficient analysis to enable our review. *Cf. Filja v. Gonzales*, 447 F.3d 241, 256 (3d Cir. 2006) (noting the Board need only "announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought") (internal quotation marks and citation omitted). The Board's discussion of Vargas-Argeta's testimony and its citations to *M-E-V-G-* and *W-G-R-* show that it understood his claims and—as in those

---

[2] Because we find Vargas-Argeta has not shown membership in a recognized PSG, we will not address his other arguments related to the Board's dismissal of his asylum claim.

8

cited precedential decisions—rejected them for his failure to show evidence of social distinction. Accordingly, we will not disturb the Board's dismissal of Vargas-Argeta's appeal.

**B.**

Vargas-Argeta's CAT claim also fails. For relief under the CAT, a petitioner must establish that, if he or she is removed, it is "more likely than not that he or she would be tortured," 8 C.F.R. § 208.16(c)(2), "with the consent or acquiescence of a public official or other person acting in an official capacity," *id.* § 208.18(a)(1). We have held that acquiescence means government officials participate in or "turn a blind eye" to torture. *Silva-Rengifo v. Att'y Gen.*, 473 F.3d 58, 70 (3d Cir. 2007). Here, the Board reviewed the IJ's findings and agreed with his determination that Vargas-Argeta had not shown a likelihood of torture with the consent or acquiescence of a government official. App. 26.

Vargas-Argeta suggests the Board applied the wrong legal standard, considering only whether he had been tortured by government officials and failing to assess whether he was tortured with official consent or acquiescence. Pet'r's Br. at 31. We disagree. The record shows the Board properly considered whether "any public official in El Salvador seeks to torture him or would consent or acquiesce in his torture," and referred both to the correct regulation and our precedent interpreting that regulation. App. 26. Vargas-Argeta also asserts the Board reached the wrong conclusion, contending "the record shows widespread government acquiescence to the rampant gang violence and extortion in El Salvador." Pet'r's Br. at 32–33. The Board acknowledged this evidence, noting Vargas-Argeta's argument on appeal "that there is widespread corruption and a high level of

9

impunity in El Salvador." App. 26. But in light of other record evidence, including evidence that Vargas-Argeta never reported any of the gang's activities to the police and evidence showing high-level efforts to curtail corruption, the Board did not find it more likely than not that Vargas-Argeta would be tortured with government acquiescence. Under the substantial evidence standard, we cannot conclude the record compels a contrary conclusion.

Finally, Vargas-Argeta argues the Board erred procedurally. He contends it failed to examine all the evidence relevant to the possibility of future torture, noting it did not discuss Vargas-Argeta's testimony about the gang's threats or his allegation the gang followed him to San Salvador. Pet'r's Br. at 30. But because the Board's decision turned on the absence of official consent or acquiescence, evidence about gang members threatening and intimidating Vargas-Argeta was less probative and did not require in-depth discussion. We are accordingly satisfied the Board's review was proper.

**IV.**

For the foregoing reasons, we will deny the petition for review.